**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **JORDANA CASCIANO and JOHN F. CASCIANO,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**JASEN RIDES, LLC,**<br><br>    Defendant. |

Civil Action No. 14-1429 (ESH)

## MEMORANDUM OPINION

Plaintiffs Jordana and John Casciano bring this action against defendant Jasen Rides, LLC, alleging various tort and contract claims arising out of an accident suffered by Jordana Casciano during a guided Segway tour conducted by defendant. Defendant has filed a motion to dismiss three of plaintiffs' five counts. (Def.'s Mot. to Dismiss or, in the Alternative, for Summary Judgment on Counts III, IV and V of Pls.' Second Am. Compl. [ECF No. 19] ("Def.'s Mot.").) For the reasons given herein, defendant's motion will be granted in part and denied in part.

### BACKGROUND

In their Second Amended Complaint, plaintiffs allege that on October 15, 2013, they took part in a guided tour of the District of Columbia, organized by defendant, which involved the use of Segway Personal Transporters ("Segways"). (Second Am. Compl. and Demand for Jury Trial [ECF No. 16] ("Compl.") ¶¶ 16-17.) Defendant "owned, operated, maintained, and distributed for purposes of the guided tour" the Segways. (*Id.* ¶ 16.) Plaintiffs were part of a tour group led by a trainer named "Alex." (*See* Def.'s Mot, Ex. A [ECF No. 19-1] ("Release"); *see also* Mem. of P. & A. in Supp. of Pls.' Opp. to Def.'s Mot. to Dismiss, or in the Alternative, for Summary

Judgment on Counts III, IV, and V of Pls.' Second Am. Compl [ECF No. 21] ("Pls.' Opp.") at 3.) Defendant has submitted a document, the second page of which is titled "SEGWAY™ TOUR CONTRACT AND RELEASE" and recites the following language:

> In consideration of being permitted to participate in a tour and/or rent and operate the Equipment, the use of which is hereby acknowledged to be an inherently dangerous and risky activity, each Participant on his own behalf, and on behalf of each minor whose name appears above and with respect to whom the adult Participant is the legal guardian. his heirs, assigns or legal representatives (each of the foregoing is a "Releasor") does hereby release indemnify and agree to hold harmless JASEN Rides, its officers. directors, representatives, employees, agents, partners and other participants of, for any and all losses, costs, damages, claims, demands, rights and causes of action of whatever kind or nature and including any and all negligence claims or causes of action, which may arise and which result from illness, personal injuries, property damage, death or of any other damages or injuries not included herein occurring during or resulting from participation in a JASEN Rides tour and/or rental.

(*Id.* at 2.) The names "Jordana Casciano" and "John Casciano" are printed and signed above this Release. (*Id.*) Plaintiffs "do not dispute that the names of both Plaintiffs . . . appear printed and signed on both pages of the document . . .; however, Plaintiffs deny that it was Jordana Casciano who signed the 'Casciano Release.'" (Pls.' Opp. at 3.)

Plaintiffs allege that during the tour, Jordana Casciano's Segway "experienced a control malfunction causing a large excursion . . . and loss of control, . . . which caused it to accelerate backward unexpectedly . . ., spin violently, and crash into the cement sidewalk surface, which resulted in her being violently ejected from the Segway." (Compl. ¶ 17.) As a result of the accident, Jordana "suffered severe and permanent physical and psychological injuries, including but not limited to bone fractures, [scarring], [and] post traumatic stress disorder." (*Id.* ¶ 25.) Plaintiffs contend that defendant "should have known of the Segway[']s] dangerous conditions, defects, and accident history," due to several product recalls and past Segway-related injuries. (*Id.* ¶ 19.)

Plaintiffs' complaint includes five counts. Count I alleges that plaintiffs' guide, Alex, failed to properly train and monitor the tour participants and to conduct the tour in a reasonable manner, and that defendant is liable for Alex's negligence under the doctrine of respondeat superior. (*Id.* ¶¶ 20-26.) Count II alleges that defendant was negligent in maintaining its Segways and instructing and monitoring the tour participants. (*Id.* ¶¶ 27-33.) Count III alleges that defendant should be held strictly liable for leasing Jordana Casciano a defective Segway. (*Id.* ¶¶ 34-42.) Count IV alleges that "an implied contract existed between [defendant] and [Jordana Casciano]" for her participation in the guided tour and that defendant breached implied warranties of merchantability and fitness for a particular purpose that were inherent in that contract. (*Id.* ¶¶ 43-47.) Count V alleges that plaintiffs suffered a loss of consortium as a result of defendant's negligence. (*Id.* ¶¶ 48-52.)

## ANALYSIS

### I.     STANDARD OF REVIEW

In evaluating defendant's motion to dismiss for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6), the Court is mindful that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

With respect to the alternative motion for summary judgment, defendant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

3

matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute as to a material fact exists if a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A moving party is thus entitled to summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## II.   STRICT LIABILITY

Defendant argues first that plaintiffs "fail to allege facts sufficient to make a claim of strict liability." (Def.'s Mot. at 8.) Defendant acknowledges that strict tort liability in the District of Columbia extends "beyond the seller of a product to 'any party that was an integral part of the overall producing and marketing enterprise that placed the defective product into the stream of commerce.'" (*Id.* at 9 (quoting *Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000, 1006 (D.C. 2013)).) But defendant contends that, even "as a lessor of Segways, . . . Defendant was not 'an integral part of the overall producing and marketing enterprise,' such that the Court could extend liability to Defendant in this case." (*Id.* at 10 (quoting *Wetzel*, 73 A.3d at 1006).) To support this contention, defendant observes that it "did not design, construct, market, or sell any Segways." (*Id.*)

The Court agrees with defendant that the test enunciated in *Wetzel* controls the outcome of this case. Moreover, the D.C. Court of Appeals does not seem to have considered the precise issue here: whether strict liability extends to a lessor of products. The *Wetzel* Court, for

example, held that a real estate developer that was "actively involved in [the] renovation" of a condominium could be held strictly liable for its damaged condition, even though the developer did not itself sell the unit. *Wetzel*, 73 A.3d at 1002; s*ee also Berman v. Watergate West, Inc.*, 391 A.2d 1351, 1359 (D.C. 1978) (holding that each of several subsidiary corporations – which were variously involved in building, owning, and selling a piece of real estate – could be held strictly liable for defects).

In the absence of controlling precedent from the D.C. Court of Appeals, this Court must "predict how that court would decide the question in a case like this." *Earle v. District of Columbia*, 707 F.3d 299, 310 (D.C. Cir. 2012). The D.C. Court of Appeals originally borrowed the "integral part" test from the Supreme Court of California. *See Berman*, 391 A.2d at 1359 (quoting *Vandermark v. Ford Motor Co.*, 391 P.2d 168, 171 (Cal. 1964)). In *Vandermark*, the Supreme Court of California applied strict liability to retailers. 391 P.2d at 171 ("Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products."). Employing the same standard, the Supreme Court of California has also extended strict tort liability to lessors of personal property. *See Price v. Shell Oil Co.*, 466 P.2d 722, 726-27 (Cal. 1970) ("[W]e are of the opinion that the doctrine of strict liability in tort should be made applicable to bailors and lessors of personal property in the same manner as we have held it applicable to sellers of such property."). The *Price* Court explained that "the lessor may be the only member of that enterprise reasonably available to the injured plaintiff, and the imposition of strict liability upon him serves, as in the case of the retailer, as an incentive to safety." *Id.* (internal quotation marks omitted). The Court believed that this rule afforded "maximum protection to the injured plaintiff while working no injustice

upon the lessor: the latter can recover the cost of the protection by charging for it in his business."[1]  *Id.* at 727.  California's rule imposing strict liability on lessors accords with the majority of courts that have considered the matter.  *See* Allan E. Korpela, *Products Liability: Application of Strict Liability in Tort Doctrine to Lessor of Personal Property*, 52 A.L.R.3d 121 (2015) (collecting cases and finding that "[m]ost of the jurisdictions which have adopted the proposition that persons engaged in the [business of] manufacturing or selling products are liable for injury or damage caused by a defect in the product, notwithstanding due care was exercised by the manufacturer or seller, have also . . . applied the doctrine to commercial lessors of products").  This Court is persuaded by the Supreme Court of California's reasoning and sees no reason why the D.C. Court of Appeals would not follow it.  Plaintiffs will therefore be permitted to proceed with their strict liability count.

## III.   BREACH OF IMPLIED WARRANTY

Defendant next urges this Court to "dismiss Plaintiff's claim of breach of implied warranty or enter summary judgment on this claim for Defendant" because "Ms. Casciano was never a party to any contract, express [or] implied, with Defendant." (Def.'s Mot. at 11.)  In particular, defendant contends that "plaintiffs . . . have not alleged any interaction with any agent of Defendant with the authority to enter into contracts on Defendant's behalf." (*Id.* at 13.) Defendant further argues that, since plaintiffs allege that Jordana Casciano never signed the

---

[1] The parties appear to agree that plaintiffs' use of the Segways constituted a lease. (*See* Def.'s Mot. at 10-11; Pl.'s Opp. at 12-13.)  The Court will assume, without deciding, that this is so.  *See* D.C. Code § 28:2A-103(a)(10) (defining "lease").  In any case, even if plaintiffs had merely licensed the Segways, this Court's strict liability holding would not change.  *See Garcia v. Halsett*, 3 Cal. App. 3d 319, 325 (1970) ("Licensors of personal property, like the manufacturers or retailers or lessors thereof, 'are an integral part of the overall . . . marketing enterprise that should bear the cost of injuries resulting from defective products.'" (alteration in original) (quoting *Vandermark*, 391 P.2d at 171)).

6

Release, she "could not have provided the necessary consideration to create an agreement to allow her to participate in the tour." (*Id.* at 14.) Defendant states that it is "implausible" that every other tour participant would have been required to sign the Release, but that "she alone was permitted to participate for the lesser consideration of mere payment." (*Id.*)

D.C. law implies into lease contracts warranties of merchantability and fitness for a particular purpose. *See* D.C. Code § 28:2A-212; *id.* § 28:2A-213. Plaintiff alleges that there existed an implied-in-fact contract between plaintiff Jordana Casciano and defendant. (Compl. ¶¶ 43-47.) "An implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Steuart Inv. Co. v. Meyer Grp.*, 61 A.3d 1227, 1233 (D.C. 2013) (quoting *Vereen v. Clayborne*, 623 A.2d 1190, 1193 (D.C. 1993)). The D.C. Court of Appeals has articulated the requirements for recovering under an implied-in-fact contract as follows: "(1) valuable services being rendered; (2) for the person sought to be charged; (3) which services were accepted by the person sought to be charged, used and enjoyed by him or her; and (4) under such circumstances as reasonably notified the person sought to be charged that the [person rendering the services] expected to be paid by him or her." *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62 (D.C. 2005) (alteration in original) (quoting *Vereen*, 623 A.2d at 1193).

Defendant's first argument is that there could not have been any implied-in-fact contract because Jordana Casciano did not interact with an agent who could have made a contract on defendant's behalf. Plaintiffs allege that defendant's employee Alex "allowed [Jordana] to fully participate in a guided tour of Washington, D.C." and argue that Alex "had the actual or apparent

authority to enter into the implied contract on behalf of the Defendant." (Pls.' Opp. at 11-12.) In response, defendant submits an affidavit from Alex Gold, who states that he "did not have the authority to enter into contracts on behalf of [defendant]." (Mem. in Reply to Pls.' Opp. to Def.'s Mot. to Dismiss or, in the Alternative, for Summary Judgment [ECF No. 23] ("Def.'s Reply"), Ex. B ¶ 5.) Even if Gold's lack of actual authority were undisputed, however, plaintiffs' contract claim would not be defeated. "[A]pparent authority arises when a principal places an agent 'in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold.'" *Makins v. District of Columbia*, 861 A.2d 590, 594 (D.C. 2004) (quoting *Feltman v. Sarbov*, 366 A.2d 137, 139 (D.C. 1976)). Plaintiffs allege that Alex "guided the tour in which [plaintiffs] participated" and had various responsibilities, including to "properly train all participants of the tour group," "monitor the participants during the course [of] the tour," and "conduct the tour in a reasonable and safe manner." (Compl. ¶ 22.) In light of these allegations, the Court cannot conclude as a matter of law that Alex lacked the apparent authority to enter into an implied-in-fact contract with Jordana Casciano on behalf of defendant for participation in the Segway tour.

  Defendant's other argument is that there could not have been an implied-in-fact contract between defendant and Jordana without a signed Release. To be sure, the Release states that a tour participant signs the Release "[i]n consideration of being permitted to participate in a tour and/or rent and operate" a Segway. (Release at 2.) But, as defendant concedes, for the purposes of this motion it is "undisputed that Ms. Casciano did not sign a Release." (Reply at 18; *see also* Compl. ¶ 18.) As such, it is unclear why the Release language should be binding on Jordana Casciano. Plaintiffs allege that defendant permitted Jordana to participate in the Segway tour without signing a Release. It is plausible that such participation would give rise to "an

8

expectation of payment." *See Union Light & Power Co. v. D.C. Dep't of Empl. Servs.*, 796 A.2d 665, 671 (D.C. 2002).  The Court therefore cannot conclude as a matter of law that there did not exist an implied-in-fact contract between Jordana Casciano and defendant.[2]

## IV.     LOSS OF CONSORTIUM

Defendant argues finally that this Court should dismiss plaintiffs' loss of consortium count.  Defendant contends that "Mr. Casciano's claim for loss of consortium . . . is barred by the agreement he signed releasing Defendant from liability."[3]  (Def.'s Mot. at 15.)  Plaintiffs respond that the Release "pertained solely to [John Casciano's] own personal participation in the . . . guided tour."  (Pls.' Opp. at 14.)

The Release only applies to "claims . . . [that] arise . . . from . . . injuries . . . occurring during or resulting from participation in a JASEN Rides tour and/or rental."  (Release at 2.)

---

[2] In its reply brief, defendant submits confirmation receipts and other documentation suggesting that John Casciano paid for plaintiffs' Segway tour and that an individual named Robert Mauchan actually booked the reservation for plaintiffs in advance.  (*See* Reply, Exs. A, C, D.)  Based on these submissions, defendant argues that "[t]here necessarily cannot have been any interaction between Ms. Casciano and Mr. Gold in which she exchanged her payment for participation in the tour."  (Reply at 17.)  The Court will not now consider these new factual submissions, which plaintiffs did not have an opportunity to dispute.  The Court does note two things, however.  First, even if John Casciano paid for his wife's Segway tour, it is possible she may still be able to benefit from various implied warranties as a third-party beneficiary.  *See Ashton v. Pierce*, 716 F.2d 56, 66 (D.C. Cir. 1983) ("[T]hird-party beneficiaries of [a contract] may enforce the duties arising under it.").  Second, if an express contract did exist with respect to plaintiffs' Segway tour, such a contract might preclude a similar implied-in-fact contract between Jordana and defendant.  *See Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) ("It is well settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract.").  The Court, however, is not presently in a position to assess the existence of such an express contract.

[3] Defendant also argues that, since plaintiffs' complaint "is devoid of any allegation of injury that Mr. Casciano suffered . . . , Ms. Casciano has no legally cognizable claim for loss of consortium."  (Def.'s Mot. at 15.)  Plaintiffs offer no rebuttal to this argument.  (*See* Pls.' Opp. at 14-15.)  As such, the Court will dismiss plaintiffs' Count V for loss of consortium with respect to Jordana Casciano.

While the word "participation" is admittedly unmodified, the subject of the sentence is "each Participant on his own behalf." (*Id.*)  "Participants" are defined in the Release as "the adults whose names and signatures appear above." (*Id.*)  Without some indication to the contrary, the term "participation" most naturally refers only to the subject of the sentence – that is, "each Participant" (*i.e.*, the signor).  This reading is bolstered by the repetition of the verb "to participate."  In other words, the Court believes that the Release is most logically read as waiving injuries "resulting from *the Participant's* participation" in the tour.

John Casciano's loss of consortium claim does not arise out of his participation in defendant's Segway tour.  In the District of Columbia, "[a] loss of consortium claim stands 'separate and independent' from a negligence claim." *Massengale v. Pitts*, 737 A.2d 1029, 1032 (D.C. 1999) (quoting *Lansburgh & Bro., Inc. v. Clark*, 127 F.2d 331, 333 (D.C. Cir. 1942)).  It is "a distinct cause of action for injury to the marriage itself." *Id.* (quoting *Stutsman v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 546 A.2d 367, 373 (D.C. 1988)).  As such, his claim is not contemplated by the Release and may go forward.

## CONCLUSION

For the foregoing reasons, the Court will deny in part and grant in part defendant's motion to dismiss or, in the alternative, for summary judgment. [ECF No. 19].  Plaintiff Jordana Casciano's loss of consortium claim will be dismissed.  All other counts may proceed.  A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   June 16, 2015